ANNA HOGAN

*v.*

THE CITY OF CHICAGO.

*Opinion filed November 8, 1897.*

1. PRACTICE—*when Appellate Court may recite facts in its judgment.* Section 87 of the Practice act, as amended in 1877, (Laws of 1877, p. 153,) authorizes the Appellate Court to recite its findings of fact in its judgment only when its findings of fact differ, in whole or in part, from those of the trial court.

2. SAME—*Appellate Court agreeing with trial court on facts must affirm, in absence of errors of law.* The Appellate Court finding the facts in controversy to be the same as found by the trial court must affirm the judgment below, in the absence of erroneous rulings upon questions of law.

3. SAME—*facts to be recited in Appellate Court's judgment must be ultimate facts.* The facts which section 87 of the Practice act requires the Appellate Court to recite in its judgment are the ultimate facts, upon the existence or non-existence of which, as set up by the pleadings, the rights of the parties depend.

4. SAME—*Appellate Court should not recite conclusions of law in its judgment.* The requirement that the Appellate Court, determining a cause upon the facts different from the court below, shall recite in its judgment the facts found, does not warrant the embodiment in the judgment of a mere conclusion of law.

5. SAME—*when Appellate Court is not warranted in reversing without remanding.* The Appellate Court is not warranted in reversing a judgment for the plaintiff in a personal injury case without remanding the cause, by reciting in its judgment facts neither ultimate in character nor necessarily different from nor inconsistent with those found by the trial court as authorizing the plaintiff's recovery.

6. SAME—*findings of fact by the Appellate Court—when not different from those of the trial court.* A finding by the Appellate Court that plaintiff was injured while attempting to get down from a city sidewalk to the ground by means of a loose plank placed there by a person unknown, and that the city had never undertaken to furnish any means of descending from such sidewalk, do not necessarily constitute a different finding of facts from that made by the circuit court in awarding damages to the plaintiff against the city.

7. APPEALS AND ERRORS—*Supreme Court may determine whether refusal to remand was proper.* Where the Appellate Court has reversed a judgment without remanding, and has recited in its judgment a finding of facts differing from that of the trial court, the Supreme

Court may determine whether the refusal to remand was proper, by inquiring whether the law was correctly applied to the facts as found by the Appellate Court.

8. MUNICIPAL CORPORATIONS—*city must keep sidewalks in reasonably safe condition—when notice of defects is presumed.* A city must keep its sidewalks in a reasonably safe condition for public travel, and where a sidewalk on a public street remains in an unsafe condition for a considerable time, notice to the city of the defective condition will be presumed.

9. SAME—*effect where sidewalk is built by private owner.* A municipal corporation knowingly permitting the public to use a sidewalk built on a public street by a private owner must assume responsibility for its condition.

10. SAME—*when city impliedly invites public to use its unsafe walk.* A city knowingly permitting an elevated sidewalk to remain without means of descending to its continuation upon the ground except by a loose plank placed there by a person unknown, and without any barricade or warning signal, impliedly invites the public to use the raised sidewalk and loose plank as a safe way.

*City of Chicago* v. *Hogan,* 59 Ill. App. 446, reversed.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. E. F. DUNNE, Judge, presiding.

This is an action on the case, brought by plaintiff in error against the defendant in error to recover damages for a personal injury. Verdict and judgment in the trial court were in favor of plaintiff in error. An appeal was taken from this judgment to the Appellate Court. The Appellate Court reversed the judgment of the circuit court without remanding the cause. The present writ of error is sued out from this court for the purpose of reviewing the judgment of the Appellate Court.

The declaration alleges that defendant was a body corporate under the laws of this State, and as such had control of the streets within its limits; that there then was a street in the city called Ogden avenue, along the southerly portion of which, between Western avenue and Rockwell street, was a sidewalk at a great height above

the ground, and extending from the end of the sidewalk to the ground there was a plank which the defendant carelessly and negligently permitted to be and remain loose and without any fastening; that when the plaintiff, while exercising due care, was passing over this plank it fell and she was thrown to the ground, her head and spine being thereby injured, and that she suffered permanent physical and mental injuries. The first count alleges that the defendant was, at the time, rebuilding this sidewalk. The second count avers that defendant knowingly permitted the walk to be in the condition described. The third count alleges that the walk had been in this condition for four weeks and was left that way by defendant. The additional count avers the defendant carelessly and negligently permitted the walk to be in this condition. The defendant pleaded the general issue.

The following statement is taken from the brief of defendant in error: "Some time during the year of 1890 Mr. Altpeter, who owned three lots at the south-west corner of Western avenue and Ogden avenue, built a sidewalk along the front of his lots, which sidewalk was about sixteen feet wide, built of planks, and extended west of Western avenue the width of his three lots, or about seventy-five feet. This is the sidewalk in question. The height of this walk above the ground at its westerly end was about three feet six inches. Along the inner or lot side of this plank-walk he built a railing or fence about three feet six inches in height, consisting of uprights 4x4. A railing 2x4 was nailed on top of these uprights, and between that and the walk a 2x6 board was nailed. This railing extended westerly to the end of this new sidewalk. From the end of this new sidewalk south-west to the railroad tracks, and along the southerly line of Ogden avenue, was a board sidewalk about six feet wide, lying flat upon the ground. A plank was used at that point to go from one walk to the other. A curb-wall was built up and the roadway was filled in as

far west as this new sidewalk extended on Ogden avenue. This was the situation of affairs there from 1890 until work was commenced in Ogden avenue for the erection of a large viaduct over the railroad tracks which crossed Ogden avenue between Western avenue and Rockwell street. This work was commenced either in the latter part of March or the first part of April, 1891. * * * The point in Ogden avenue at which this work was begun upon and for this viaduct, which was erected by the city, was from six to ten feet west of where this higher sidewalk ended. Plaintiff's evidence shows that for two or three months prior to the fifth day of August, 1891, when plaintiff fell, a certain plank was used by the public in passing from this new and higher sidewalk down upon the old sidewalk which lay upon the prairie, and from that lower walk up onto this higher walk, and that when plaintiff attempted to go down that plank from this higher walk to the ground (the old walk having been removed when work was begun to make room for the retaining walls) the plank slipped off from this new or higher walk, causing her to fall to the ground, whereby, it is claimed, she sustained injuries above complained of."

The judgment of the Appellate Court is as follows: "On this day come again the said parties, and the court, having diligently examined and inspected, as well the record and proceedings aforesaid as the matters and things therein assigned for error, and being now sufficiently advised of and concerning the premises, are of the opinion that, in the record and proceedings aforesaid, and in the rendition of the judgment aforesaid, there is manifest error; therefore it is considered by the court, that, for that error, and others in the record and proceedings aforesaid, the judgment of the circuit court of Cook county in this behalf rendered be reversed, annulled, set aside and wholly for nothing esteemed, and this court finds that the said appellee was injured while attempting to go down from a sidewalk in said city to the ground

below by means of a loose plank placed there by a person unknown, and that the appellant had never undertaken to furnish any means of descending from said sidewalk, and was, therefore, under no duty as to the safety of the means which the appellee adopted, wherefore this cause is not remanded." Then follows a further finding, that appellee pay the costs.

WING, CHADBOURNE & LEACH, (S. C. STOUGH, of counsel,) for plaintiff in error.

ROY O. WEST, BENJAMIN F. RICHOLSON, and WORTH E. CAYLOR, for defendant in error.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

In this case, the Appellate Court has rendered a judgment, in which it makes certain recitals, and reverses the judgment of the circuit court without remanding the cause. The only statutory provision, which authorizes the Appellate Court to make a recital of facts in a judgment entered by it, is section 87 of the Practice act, which has been so often under consideration by this court. That section provides, that if any final determination of any cause is made by the Appellate Court "as the result, wholly or in part, of the finding of the facts concerning the matter in controversy different from the finding of the court from which such cause was brought by appeal or writ of error, it shall be the duty of such Appellate Court to recite in its final order, judgment or decree, the facts as found, and the judgment of the Appellate Court shall be final and conclusive as to all matters of fact in controversy in such cause."

*First*—The recital of facts by the Appellate Court in its judgment is only authorized by section 87 when its finding, either wholly or in part, of the facts concerning the matter in controversy is different from the finding of

the trial court.     In *Hawk* v. *Chicago, Burlington and North-
ern Railroad Co.* 147 Ill. 399, we said : "It is the duty of the
Appellate Court to review the facts, as well as questions
of law."     In *Siddall* v. *Jansen,* 143 Ill. 537, we said, quot-
ing from the case of *Brown* v. *City of Aurora,* 109 Ill. 165:
"The Appellate Court, when it *differs* from the conclusion
reached by the trial court, is required to recite in its final
order the facts as found."     In the same case of *Siddall* v.
*Jansen, supra,* quoting from the case of *Coalfield Co.* v. *Peck,*
98 Ill. 139, we said :  "If  *  *  *  the facts are held by
the Appellate Court to be *different* from the finding in the
circuit court, that court may, of course, found its judg-
ment upon such different finding, and the facts so found
must be recited in the judgment."

Where the Appellate Court makes the same finding
of facts as the trial court, it must affirm the judgment of
the latter court, unless it finds that there was some erro-
neous ruling upon a question of law.  In *Coalfield Co.* v.
*Peck, supra,* we said:   "If the facts be found by the Appel-
late Court in accord with the finding in the circuit court,
the judgment of the circuit court should be affirmed."
This language was quoted with approval in *Siddall* v.
*Jansen, supra;* and, in the latter case, referring to the case
of *Hayes* v. *Massachusetts Life Ins. Co.* 125 Ill. 626, we fur-
ther said:   "As respects the third count, there being no
special finding, in the absence of a special finding it
would be presumed that the Appellate Court found the
same way that the trial court had found, and as the evi-
dence was sufficient in the trial court to sustain the third
count, it was error in the Appellate Court not to have
affirmed the judgment of the circuit court."     In line with
the cases thus referred to it was said, in the very recent
case of *Huntington* v. *Metzger,* 158 Ill. 272, that, if the Ap-
pellate Court "had made the same finding of the facts in
regard to the matter in controversy as was made by the
trial court, it was unnecessary to recite in its judgment
the facts as found by it, because the statute only pro-

vides for such a recital in case of a different finding, and not where there is the same finding."

. In the light of these views, it cannot be said, that the judgment of the Appellate Court in this case recites a different finding of facts from that made by the circuit court.  It recites only two facts, and then draws from those facts a conclusion of law as to the duty of the city in a certain particular.  The facts recited are, *first*, that plaintiff in error was injured while attempting to go down from a sidewalk in said city to the ground below by means of a loose plank placed there by a person unknown; and, *second*, that the defendant in error had never undertaken to furnish any means of descending from said sidewalk.  The judgment of the circuit court, awarding damages to plaintiff in error, was perfectly consistent with a finding of both of these facts to be true.

Here was a part of a public sidewalk, which came to an abrupt termination at a distance of three feet and six inches from the balance of the sidewalk which lay upon the ground, or from the ground itself where the sidewalk had formerly been laid.  This street was under the control of the city.  Many persons had for months been in the habit of passing along the sidewalk in question.  How were they to descend to the ground from the point where the higher portion of the sidewalk ended?  It was necessary either to jump from the sidewalk to the ground a distance of three feet and a half, or to walk down a plank which had been used for a considerable time, both for ascending from the ground to the sidewalk and for descending from the sidewalk to the ground, by persons passing there.  It was immaterial, whether the plank had been placed there by a person unknown, or not.  It is the duty of a city to keep its streets and sidewalks in a reasonably safe condition for persons to travel over; and when a sidewalk on a public street is in a defective condition so that it is unsafe to travel upon, and so remains for a considerable time, notice of the defective condition

of the walk will be presumed. (*City of Chicago* v. *Dalle*, 115 Ill. 386). If there was an abrupt break in the sidewalk, making ascent and descent by the persons passing upon it dangerous and unsafe, and a plank had been in use there for the purpose of accomplishing the ascent and descent without jumping, the question would arise, whether this condition of things had existed for a sufficient length of time prior to the injury to enable the city, by the use of due diligence, to know of it. If the city had actual notice of the defect, or was bound by lapse of time to take notice of it, its freedom from liability would not necessarily result from the fact, that the plaintiff in error attempted to descend in the manner stated, nor from the further fact that the city had never undertaken to furnish any means of descending from the sidewalk. Indeed, it would rather indicate that there was negligence on the part of the city, if, with actual or constructive knowledge of the condition of the sidewalk, it did not undertake to furnish a safe mode of descending therefrom.

"During the progress of the work of altering or repairing a highway, ordinary care must be used to prevent injuries to passengers thereon; and if, in altering the grade of, or otherwise working upon, a street previously passable, the way becomes impassable or dangerous for travel, it is negligence to omit to warn the public by erecting fences, barriers, lights or the like." (Shearman & Redfield on Negligence, sec. 376). If a city, while engaged in improving a street which was theretofore passable, renders it impassable and leaves it in that condition without warning, whereby an injury results, the city is liable. (*City of Aurora* v. *Rockabrand*, 149 Ill. 399; *Milwaukee* v. *Davis*, 6 Wis. 377).

When a city is improving one of its streets by contract, it is under obligation to have the improvement so carried on as not to endanger the lives or limbs of travelers upon the street. (*City of Springfield* v. *LeClaire*, 49

Ill. 476). Upon the city rests the primary obligation of keeping the streets in a safe condition for public travel, and it cannot evade this obligation or cast it upon others by any act of its own. Hence, where a street or side-walk is left in a dangerous condition by a contractor, who is improving the same under contract with the city, the municipal corporation, though having no immediate control over the workmen, is not relieved from liability to a party suffering injury by reason of the defect. (*Village of Jefferson* v. *Chapman*, 127 Ill. 438). Nor is it mate-rial by whom the sidewalk was originally constructed. If it was built by the owner of the lot abutting upon it by order of the city authorities or without such order, such authorities are bound to keep it in repair, and pre-serve it for the safe passage of all whose necessities require its use. (*City of Bloomington* v. *Bay*, 42 Ill. 503). If a sidewalk built by an individual is used by the public with the knowledge of the city authorities, the law will require them either to remove the sidewalk, or to assume responsibility for its reasonably safe condition. (*Village of Marseilles* v. *Howland*, 124 Ill. 547). When the author-ities so act with reference to the sidewalk as to hold it out to the people as a public thoroughfare, they thereby invite the public to use it as belonging to the munici-pality. (*Village of Mansfield* v. *Moore*, 124 Ill. 133).

In *City of Chicago* v. *Kimball*, 18 Ill. App. 240, the city, upon a portion of the street, had raised the sidewalk about five feet above the grade, and at the termination of this raised portion the sidewalk stopped abruptly with a height of five feet, with no steps; and only a plank twelve inches wide and about twelve feet long was laid as a bridge to pass up and down; while descending this plank, the plaintiff's intestate lost her balance, and fell, and died from the injuries thereby inflicted; and, upon this state of facts, the city was held to be liable in an opinion by the late Justice MACALLISTER, who said: "There is no question of law arising upon the giving,

refusing or modifying instructions, or as to the admission or exclusion of evidence. But counsel for the city urge that deceased was guilty of gross negligence in attempting to descend the plank, and that we should say, as matter of law, such negligence barred a recovery. We are of opinion that, in view of the peculiarity of the circumstances, it was a fair and proper matter for the jury to say whether or not the deceased was in the exercise of ordinary care in attempting to descend the plank in the way she did, and that the jury having found that she was, we ought not to interfere with the verdict on that ground. That the city was guilty of a gross violation of its duty to the public in so constructing and leaving said sidewalk there is no room for doubt. But in considering the question of ordinary care on the part of deceased, it must be borne in mind that such raised sidewalk and plank were tendered to the public as a safe way. There were no signals or barriers or aught else to indicate that the city authorities regarded it as dangerous, but there was, on their part, an implied invitation to the public to pass there. Now, can we say, as a matter of fact, that the precautions which the deceased took were not such as all reasonably prudent persons would have taken under like circumstances?"

The questions discussed by counsel in their briefs before the Appellate Court in the case at bar were mainly questions of fact. No complaint seems to be made by either side of any error in the giving or refusal of instructions. One of the questions of fact was, whether there was a barricade at the end of the sidewalk to serve as a warning to those passing there. There were many witnesses upon both sides of this question, and it was fairly left to the jury, who, in giving their verdict, must have found that there was no barricade. There is no different finding upon this subject by the Appellate Court in its judgment. If there was no barricade, then there was an implied invitation to the public to pass there, and the

raised sidewalk and plank must be regarded as having been tendered to the public as a safe way.

It is plain from what has been said, that the trial court in rendering its judgment may have found the two facts, recited by the Appellate Court in its judgment, the same way as they were found by the latter court. The finding of the two facts as found by the Appellate Court was perfectly consistent with a judgment affirming the judgment of the trial court. If the two facts thus found be admitted, their existence is not inconsistent with the further facts, that the city had notice of the defect, and had not provided a barricade or signal of warning, and had invited the public to pass there by tendering the raised sidewalk and plank as a safe way.

*Second*—The facts, which the Appellate Court is required by section 87 to find and incorporate in its judgment, are the ultimate facts upon the existence or the non-existence of which, as set up in the pleadings, the rights of the parties depend. That the facts thus to be found must be the ultimate facts is held in the following cases: *Brown* v. *City of Aurora*, 109 Ill. 165; *Rogers* v. *Chicago, Burlington and Quincy Railroad Co.* 117 id. 115; *Siddall* v. *Jansen*, 143 id. 537; *Senger* v. *Town of Harvard*, 147 id. 304. In an ordinary action for damages on account of injuries received, the ultimate facts will ordinarily be, that the plaintiff was or was not in the exercise of ordinary care, and that the defendant was or was not guilty of negligence. The proper form of judgment to be entered by the Appellate Court, when proceeding under section 87, is substantially such as is set out in *Senger* v. *Town of Harvard, supra*. In the latter case we said: "Where the Appellate Court finds the facts different from the trial court, the facts recited must include every material issue submitted to the trial court to authorize the Appellate Court to render final judgment different from the one below. * * * But a finding upon an immaterial issue, or facts which can have no bearing on the decision of a

168—86

case, is not required." It is only where the Appellate Court finds the facts *differently* from the finding of the trial court, that such finding of the Appellate Court is conclusive in this court. (*Jones* v. *Fortune,* 128 Ill. 518; *Hawk* v. *Chicago, Burlington and Northern Railroad Co.* 147 id. 399; *Siddall* v. *Jansen, supra*).

It is manifest, that the two facts as found by the Appellate Court are not ultimate facts. Both of them together, if they be admitted to be true, do not amount to a finding upon the question whether or not the plaintiff was in the exercise of ordinary care, or upon the question whether or not the defendant was guilty of negligence that contributed to the injury.

*Third*—Inasmuch as the Appellate Court is required by section 87 to recite in its judgment the *facts* as found by it, and only to recite the ultimate facts, or conclusions drawn from the subordinate and evidentiary facts, when it makes its final determination as the result wholly or in part of the finding of the *facts* concerning the matter in controversy different from the finding of the trial court, it follows that there is no warrant in that section for embodying in the judgment of the Appellate Court a mere conclusion of law. Where the Appellate Court régards any ruling of the trial court upon a question of law as erroneous, it must reverse the judgment and remand the cause. It cannot, in such case, reverse the judgment without remanding the cause. In *Siddall* v. *Jansen, supra,* we said: "It is apparent, that the Appellate Court did not reverse the judgment of the Superior Court on account of any erroneous ruling on any question of law that arose on the trial in the Superior Court, because, if the reversal had been on that ground, the cause would, of course, have been remanded for another trial where the errors might be obviated." In the same case we again said: "If the circuit court erred, as held in the case, in giving an instruction, it was the clear duty of the Appellate Court to reverse the judgment and remand

the cause for another trial, so that the error could be corrected; otherwise a party entitled to recover might be cut off from a recovery by the mere error of the trial court in giving or refusing an instruction."

In *Senger* v. *Town of Harvard, supra,* we also said: "Had the Appellate Court reversed the judgment on the ground that the trial court had erred in giving or refusing instructions, or erred in its ruling in the admission or exclusion of evidence, or *in passing on any other legal question* which might be obviated on another trial, then it would be the duty of the court to remand for another trial."

In the case at bar, the Appellate Court has merely stated in its judgment what purports to be a conclusion of law from two facts recited therein which are not ultimate facts, and which as found are not necessarily different from the finding of facts by the circuit court. That conclusion of law is expressed in the following words: the city "was, therefore, under no duty as to the safety of the means which the appellee adopted." If the conclusion thus announced had been a correct conclusion of law, and if the trial court had made any ruling, or given or refused any instruction in opposition to it, then it was the duty of the Appellate Court to reverse the judgment and remand the cause for another trial. Instead of doing so, it has reversed the judgment without remanding the cause.

But we do not regard the legal conclusion of the Appellate Court as correct, in the light of the views already expressed. If the city had notice of the condition of the sidewalk, and permitted it to remain as it was and invited the public to pass over it, then it was its duty to see, that the means adopted for descending from the higher to the lower level of the walk was safe; and there is nothing in the finding of facts made by the Appellate Court which would relieve the city from the performance of that duty.

Even if the judgment of the Appellate Court can be regarded as such a finding of facts as is contemplated by section 87, "we may inquire whether the law has been correctly applied to them, and, therefore, determine whether the refusal to remand was proper." (*Jones* v. *Fortune, supra; Siddall* v. *Jansen, supra*). In *Hawk* v. *Chicago, Burlington and Northern Railroad Co. supra*, we said: "Under our former decisions there is but one question presented for consideration, and that is, conceding the facts to be as found by the Appellate Court, was the law properly applied in that court."

The judgment of the Appellate Court is reversed, and the cause is remanded to that court for the entry of such judgment, reversing or affirming the judgment of the circuit court, as in their judgment, may be proper, and reciting in their judgment the facts found by them, if any such final determination of the cause is made by them, as is provided for in section 87 of the Practice act as above quoted. Leave is given to withdraw the record of the circuit court filed in this court for the purpose of re-filing it in the Appellate Court.

*Reversed and remanded.*