FREDERICK MANTHEI, Plaintiff in Error, *vs.* BELT RAIL-
WAY COMPANY OF CHICAGO, Defendant in Error.

*Opinion filed February 20, 1908.*

APPEALS AND ERRORS—*Appellate Court may find facts different
from trial court although defendant introduces no evidence.* That
the defendant offers no evidence in an action at law for personal
injury does not preclude the Appellate Court from finding an ulti-
mate fact different from the trial court, where the ultimate fact
is not directly proven and different conclusions may be deduced
from the facts proven; and such finding may be incorporated in
the Appellate Court's judgment, reversing without awarding a new
trial, and is binding upon the Supreme Court.

WRIT OF ERROR to the Appellate Court for the First
District;—heard in that court on appeal from the Circuit
Court of Cook county; the Hon. R. S. TUTHILL, Judge,
presiding.

On August 23, 1900, Frederick Manthei, the plaintiff
in error, brought suit in the circuit court of Cook county
against the Belt Railway Company of Chicago, defendant
in error, the Chicago and Western Indiana Railroad Com-
pany and the Stockham Manufacturing Company to recover
damages for personal injuries alleged to have been sus-
tained by him through the negligence of the defendants.
Judgment was recovered by him against defendant in er-
ror, which was reversed, without remanding, upon an ap-
peal to the Appellate Court for the First District, and to
review that judgment plaintiff in error has sued out a writ
of error from this court.

The amended declaration contains three counts. The
first and second are substantially the same, and allege that
plaintiff in error was on July 26, 1900, in the employ of
the defendant the Stockham Manufacturing Company upon
its premises located in the city of Chicago; that a certain
switch track had been constructed upon said premises, over
which the Belt Railway Company and the Chicago and

Western Indiana Railroad Company, with the knowledge, consent and procurement of the Stockham Manufacturing Company, operated, pushed and hauled certain freight cars with a locomotive; that the plaintiff in error was then and there negligently and recklessly required by the foreman of said manufacturing company to clear away a quantity of coal which had fallen upon said switch track in front of and near a certain freight car then and there standing on said track, and that it then and there became the duty of said company to furnish him a reasonably safe place in which to perform said service; that it became necessary, in order to protect him from injury and danger while in the performance of said service, to give him due warning of the removal of said freight car, and that it became the duty of defendants the Belt Railway Company and the Chicago and Western Indiana Railroad Company, by their agents then and there removing said freight car over said switch track, to give due and timely warning before pushing or removing said car, so as to avoid injury to plaintiff in error, but that defendants, and each of them, then and there in charge of said premises, freight cars and engine, and controlling the same, negligently failed to warn him so as to enable him to protect himself from injury and danger which would result to him from the removal of the car, and thereby, while engaged in removing the coal aforesaid from said switch track, in the exercise of all due care and caution for his own safety, the defendants the Belt Railway Company and Chicago and Western Indiana Railroad Company, by their agents, negligently operated said engine, and the defendant Stockham Manufacturing Company permitted the same to be operated, so that said car, without warning having been given to plaintiff, was hauled and removed upon and over said switch track against a plank upon said track, whereby said plank was violently forced and pushed against plaintiff in error, severely injuring the bones of his left leg and foot, etc. The third count alleges that the defendants negligently

failed to warn the plaintiff so as to enable him to protect himself from injury and danger which would result to him from the removal of the freight car, and that the defendants negligently "removed said car upon and from said switch forcibly to and against a plank then and there upon said switch, whereby said plank was violently forced" against the plaintiff, inflicting the injury complained of.

To the declaration pleas of not guilty were interposed. At the close of all the evidence each of the defendants moved the court for a peremptory instruction, which was granted as to the Stockham Manufacturing Company and denied as to the other defendants, against whom a verdict in the sum of $2000 was returned by the jury on February 27, 1903. Thereafter, on March 14, 1903, on motion of plaintiff in error, the suit was dismissed as to the Chicago and Western Indiana Railroad Company, and after overruling a motion for a new trial and in arrest of judgment the court entered judgment upon the verdict against defendant in error.

On July 26, 1900, the day of the accident, plaintiff in error was employed by the Stockham Manufacturing Company at its plant in the city of Chicago, which was enclosed by a board fence eight feet in height. The fence on the west extended south from the north-west corner of the yard a distance of about six car-lengths and then jogged east across a switch track, then south along the east side of said track to the south-west corner of the yard. The switch, which was owned by the Stockham company and connected with the lines of the Belt railway, was laid along the west side of the yard and had a capacity of six cars. From the tracks of the Belt Railway Company to the south, cars were pushed in upon the switch and later pulled out by locomotives owned by that company. During the forenoon of July 26, 1900, there were five or six freight cars standing on the switch track, inside of the yard. On that morning or the day previous a car-load of coal had been unloaded upon the ground immediately east of the track, about five car-lengths

from the north end of the yard. At this point the surface of the ground beside the road-bed was from two to three feet higher than the bed of the track, and a large quantity of the coal had rolled back from the pile and lodged under the car and upon the rail, necessitating its removal before the car could be moved. The first car north of this had contained pig iron, which had been unloaded that morning, and in unloading it a two-inch plank had been used by the manufacturing company as a runway. When the car was unloaded the plank had been left lying on the ground east of the car, with the west end of the plank either upon the east rail under the car or a few inches east of that rail, and with the east end of the plank resting on the bank beside the track. About the middle of the forenoon, after the Belt railway train crew had arrived and coupled the cars in the yard to other cars coupled to the engine standing outside of the yard on its track preparatory to taking the cars south and out of the yard, Johnson, the foreman of the manufacturing company, directed the plaintiff in error and two other of its employees to take shovels and remove the coal from the switch track. After Manthei had been at work a few minutes, the foreman of the train crew, who was standing with Johnson on a platform three or four feet from the ground and seventy-five or one hundred feet north of Manthei, signaled the engineer to go ahead. The foreman of the train crew could then see Manthei. The train started forward. One car passed the plank without disturbing it, but the next car caught the plank, pushing it forward and causing the east end, in some manner not clearly shown by the evidence, to strike the plaintiff in error on the left leg. When the train started he was standing about three feet from the car beside which he was working and about ten feet south of the plank, with his back to the north. Upon the trial he testified that he had walked over the plank in going to the work and noticed its position, but that he did not know the engine was attached to the cars. He also stated

that he was clearing the rails of coal so that the engine could move the cars. Whether he could see the locomotive from where he was working is not clear from the evidence.

Plaintiff in error, the foreman of the Stockham company and a physician testified in behalf of the plaintiff, and this, with certain admissions made by defendant in error, was all the evidence offered.

The Appellate Court incorporated in its judgment of reversal a finding of facts adverse to Manthei. It is assigned as error that the Appellate Court erred in finding the facts and in reversing the judgment of the circuit court.

James R. Ward, for plaintiff in error.

William L. Reed, and E. P. H. West, (William J. Henley, of counsel,) for defendant in error.

Mr. Justice Scott delivered the opinion of the court:

The substance of the finding of facts incorporated in the judgment of the Appellate Court is, that the omission of the railway company to warn Manthei, before moving the cars, that they were about to be moved, was not the cause of the accident; that Manthei, in the absence of such notification, knew the cars were about to be moved, and that the railway company was not guilty of any negligence charged in the declaration.

The railway company offered no evidence, but, upon its motion for a peremptory instruction being overruled, submitted the case to the jury. Plaintiff in error contends that there was no conflict in the evidence offered, and that there was no matter of fact in controversy in reference to which the Appellate Court had authority to make a finding of fact.

The principal case in this State upon this subject is *Jones v. Fortune,* 128 Ill. 518, where it was said: "Under our decisions it is competent for the trial court to exclude the evidence from the jury where it has no legitimate tendency

to establish the cause of action alleged, and the Appellate Court is authorized, on appeal, to do what it shall hold the trial court should have done, in this respect, upon the trial. (*Commercial Ins. Co.* v. *Scammon,* 123 Ill. 601.)   But it is manifest that if the Appellate Court shall reverse the trial court for error in its rulings of law it must remand the cause for a new trial, unless it shall find that the evidence does not tend to prove the cause of action alleged, for otherwise it will deprive the plaintiff of the guaranteed right of trial by jury.   If the Appellate Court shall refuse to remand the cause for the reason that the evidence does not tend to prove the cause of action alleged, it must, 'either wholly or in part, find the facts concerning the matter in controversy different from the finding of the trial court,' and in that event it is required to recite, in its final order, judgment or decree, the facts as found.  (Practice act, sec. 88; 2 Starr & Cur. Stat. p. 1842.)   The facts, when thus recited, are not the subject of controversy in this court, but we may inquire whether the law has been correctly applied to them, and therefore determine whether the refusal to remand was proper."

The question was again under discussion in *Siddall* v. *Jansen,* 143 Ill. 537, where the authorities were reviewed, *Thomas* v. *Fame Ins. Co.* 108 Ill. 91, overruled, and the doctrine of *Jones* v. *Fortune* re-affirmed.  In *Homersky* v. *Winkle Terra Cotta Co.* 178 Ill. 562, the case in 128 Ill. was quoted from and approved.  In *Weeks* v. *Chicago and Northwestern Railway Co.* 198 Ill. 551, it was said that the judgment of the Appellate Court is made final and conclusive only "as to all matters of fact in controversy in such cause," and that if there are no matters of fact in controversy in the case, then the Appellate Court is without power to make a finding of fact differing from the finding of fact made by the court of original jurisdiction.   It was there further said, however, that matters of fact included all inferences of fact deducible from the facts proved, and the

conclusion reached was, that although there be no controversy over the facts proved, admitted or agreed upon, yet if different conclusions of ultimate fact may be drawn or inferred from the evidence, then the Appellate Court may incorporate in its judgment a finding of facts differing from that of the trial court, and such finding will not be subject to review in this court.

Plaintiff in error relies principally upon the case of *Treat v. Merchants' Life Ass.* 198 Ill. 431, where it was held that the question presented to the Appellate Court by an assignment of error challenging the action of the superior court in holding, upon motion of the plaintiffs in the case, that the evidence offered by the defendant presented no defense to the action, raised only a question of law, and that the Appellate Court, therefore, had no power to make a finding of fact. That case was very evidently one in which there could be no controversy as to the ultimate facts established by defendant's evidence. The only question was whether, under the law, such ultimate facts constituted a defense, and, as we shall hereafter see, that case is therefore distinguishable from the one at bar.

No warning of any character was given to Manthei by defendant in error before the cars were started, nor was any warning given to him after the cars were started and the plank began moving. The foreman of the switching crew was in a position where he could see the board lying beside the track when he gave the signal to move the train. After the board began moving no effort was made to stop the train. Whether or not the Belt Railway Company was guilty of negligence charged in the declaration was to be inferred from these facts. The *nisi prius* court from these facts deduced the conclusion that the railway company was guilty of the negligence charged, while the Appellate Court drew a different inference from the same facts, as it had authority to do under the law. The ultimate fact here was not directly proven but could only be inferred from other

facts proven. Such finding of fact we are without power to review. *Jones* v. *Chicago, Rock Island and Pacific Railway Co.* 231 Ill. 302; *Hecker* v. *Illinois Central Railroad Co.* id. 574.

There is no basis for the contention that the Appellate Court placed an erroneous construction upon the declaration.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*